# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| SHAWN KEVIN EDLIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF GADSDEN, ALABAMA, a )<br>municipal corporation, et al., )<br>)<br>Defendants. ) | Case No.: 4:11-CV-335-VEH |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Shawn Kevin Edlin ("Mr. Edlin") initiated this case on December 29, 2010, against several different defendants, in the Circuit Court of Etowah County, Alabama. (Doc. 1 at Ex. A). On January 31, 2011, the Defendant City of Gadsden removed the lawsuit to this court on the basis of federal question jurisdiction. (Doc. 1 at 4 ("The U.S. District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331.")).

Pending before the court is a Motion to Dismiss on Behalf of Etowah County Alabama, Etowah County Sheriff's Department, and Etowah County Sheriff Todd Entrekin (collectively, the "Etowah County Defendants") (Doc. 5) (the "Motion")

filed on February 23, 2011. On February 28, 2011, Mr. Edlin filed two documents in response to the Motion. (Docs. 16, 17). The Etowah County Defendants followed with their reply (Doc. 18) on March 7, 2011, and the Motion is now under submission. For the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## II. APPLICABLE STANDARDS

### A. Motion to Dismiss

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**B.     Qualified Immunity**

Qualified immunity may be claimed by an individual defendant who is being sued personally for actions that he or she took while acting under color of state law. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Qualified immunity is a question

of law to be decided by the court prior to trial. It is designed to allow officials who are entitled to qualified immunity to avoid the expense and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991).

The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow*, 457 U.S. at 815-19. Under this test, public officials performing discretionary functions which would objectively appear to be within the official's authority have qualified immunity if the challenged conduct did not violate a clearly established constitutional right of which a reasonable person would have known, given the circumstances and information possessed by the official at the time of the conduct. *Id.* at 818.

The objective-reasonableness test is a two-part analysis. First, the defendant public official must prove that he was performing duties within the scope of his discretionary authority when the alleged violation occurred. *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his normal job duties and were taken in accordance with those duties. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *Cronen v. Texas Dep't of Human Services*, 977 F.2d 934, 939 (5th

Cir. 1992) ("An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.").

Once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton*, 919 F.2d at 1537. The plaintiff may meet this burden by establishing that "the defendant public official's actions 'violated clearly established constitutional law.'" *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub-parts. *Id.* at 1538. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

"Clearly established" means that "[t]he contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent. *Id.* (citations omitted). Under this standard, qualified immunity is available to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

335, 341 (1986).

To defeat a qualified immunity defense, the plaintiff bears the burden of showing that the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, . . . the law clearly proscribed the actions the defendant took." *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989), *cert. denied*, 493 U.S. 831 (1989) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, the court is guided by the Eleventh Circuit's recent holding in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that <u>the heightened pleading rule no longer applies to civil rights cases in which a qualified immunity defense is asserted</u>:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, <u>we agree with Randall that those cases were effectively overturned by the *Iqbal* court</u>. <u>Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*</u>. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .

> After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (emphasis added) (footnote omitted).

### III.   ANALYSIS

Mr. Edlin has filed suit under 42 U.S.C. § 1983 asserting violations of his Fourteenth Amendment rights due to an allegedly "unreasonable seizure of the person . . . violating his rights under the Fourth, Fifth, Eight[h] and Fourteenth Amendments to the United States Constitution[.]" (Doc. 1-1 at 10). The incident involves the arrest of Mr. Edlin on or about January 3, 2009, in which he allegedly "was punched in the face on videotape by a police officer while in handcuffs" and "was repeatedly kneed, kicked, punched or stabbed in the face as he begged for mercy and help." (Doc. 1-1 at 11).

Mr. Edlin concedes that the Etowah County Defendants are correct that a dismissal is appropriate as to all of the issues raised in the Motion except for his deliberate indifference claim against Sheriff Entrekin in his individual capacity. The court addresses the uncontested matters first.

####   A.   Uncontested Matters

In his response, Mr. Edlin has agreed that the following portions of the Motion

are due to be granted:

> 1. Plaintiff concedes as to Defendant Etowah County.
>
> 2. Plaintiff concedes as to Defendant Etowah County Sheriff's Department.
>
> 3. Plaintiff concedes as to Defendant Etowah County Sheriff Todd Entrekin in his official capacity. . . .
>
> 5. Plaintiff concedes as to any State claims against Sheriff Todd Entrekin.
>
> 6. Plaintiff intends to amend his complaint in order to address the fictitious party pleading as his Complaint was filed in State Court.

(Doc. 16 ¶¶ 1-3, 5-6 (corresponding with numbering listed in Mr. Edlin's response)). Accordingly, those portions of the Motion are **GRANTED** as unopposed by Mr. Edlin.

### B. Contested Matter

Thus, the one remaining contested issue is Mr. Edlin's a supervisory liability claim against Sheriff Entrekin. (*See* Doc. 1-1 at 14 (Count VII for "Failure to Train, Supervise, and/or Discipline on Behalf of Etowah County Sheriff's Department, Sheriff Todd Entrekin")). In opposition to the Motion, Mr. Edlin "asserts that Etowah County Sheriff Todd Entrekin is liable in his individual capacity and is not entitled to qualified immunity[,]" and expressly "denies that he has failed to demonstrate any

supervisory liability claims." (Doc. 16 ¶ 4).

Under the defense of qualified immunity and the framework of *Iqbal*, the court must determine whether the complaint plausibly asserts Sheriff Entrekin acted in a supervisory manner that was clearly unconstitutional. In other words, the court must here decide if Mr. Edlin's complaint sufficiently alleges facts which, if true, could establish that Sheriff Entrekin violated clearly established law. The court concludes that Mr. Edlin has.

### 1. Discretionary Capacity

Applying the objective standard set forth above, Defendant Sheriff Entrekin has established that he acted within his discretionary capacity. More particularly, it is only by virtue of his position as Sheriff of Etowah County that he even arguably has supervisory authority over any of the deputy sheriffs who allegedly participated in the illegal search and seizure and/or arrest of Mr. Edlin occurring on or about January 3, 2009. Furthermore, Mr. Edlin does not dispute that Sheriff Entrekin's potential individual liability arises out of his discretionary functioning. Thus, Sheriff Entrekin has met his burden as the defendant on qualified immunity.

### 2. Supervisory Liability

As the Eleventh Circuit has summarized the standard governing supervisory liability:

"Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir.1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at 1234 (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" *Cottone*, 326 F.3d at 1360 (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," *Gonzalez*, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

In *Cottone*, the plaintiffs, the estate and the father of a deceased inmate who had been held at the Broward County Jail, alleged that jail supervisors were liable for the jail guards' failure to monitor a mentally disturbed individual who attacked and killed the inmate. *Cottone*, 326 F.3d at 1361. The complaint further alleged that "the defendants were on notice of the widespread unconstitutional conduct" by guards at the jail but had failed to properly train and supervise them. *Id.* This Court held that the plaintiffs failed to state a claim of supervisory liability because the complaint did not allege "any specific facts at all" showing that the supervisors had knowledge of the guards' failure to monitor the

inmates during this incident "or even one prior incident." *Id.*

Because the complaint in *Cottone* failed to allege that the supervisors were on notice of the guards' unconstitutional conduct, it did not adequately allege that they were aware of a need to correct it through further training or supervision. *Id.* at 1361-62. Furthermore, the plaintiffs in that case did not allege that a policy or custom implemented by the supervisors was involved with the inmate's death or that the supervisors instructed the guards to commit constitutional violations. *Id.* at 1362. Therefore, "the plaintiffs fail[ed] to establish the necessary causal connection between the supervisors and the unconstitutional conduct in issue for supervisory liability to be imposed." *Id.*

Unlike the plaintiffs in *Cottone*, Danley has alleged sufficiently specific facts to establish the necessary causal connection between supervisors Rikard and Willis and the unconstitutional conduct of the jailers. Danley's complaint alleges that before this incident, Rikard and Willis had knowledge through "force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation" that jailers at the Lauderdale Detention Center "regularly used pepper spray excessively as a means of punishment and not for legitimate reasons." The complaint also alleges that through the same sources, Rikard and Willis were aware that jailers at the detention center "regularly denied inmates prompt and adequate ventilation, decontamination, and medical care following pepper spray discharge as a means of punishment and not for legitimate reasons."

*Danley v. Allen*, 540 F.3d 1298, 1314-15 (11th Cir. 2008) (emphasis added), *overruling on heightened pleading requirement recognized by Randall v. Scott, discussed supra*, at 6-7.

Mr. Edlin's supervisory liability count asserted against Sheriff Entrekin makes

no allegations that he personally participated in any unconstitutional conduct against him. (Doc. 1-1 at 14). Instead, Mr. Edlin seeks to maintain supervisory liability by asserting a causal connection between the actions (or inactions) of Sheriff Entrekin and the alleged constitutional deprivation that Mr. Edlin endured.

More specifically, Mr. Edlin links liability through the policy or custom route as opposed to the notice of widespread unconstitutional conduct avenue. (*See, e.g.*, Doc. 1-1 at 14 ("Prior to this incident the Etowah County Sheriff's Department, Sheriff Todd Entrekin (individually and in his official capacity) have developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Etowah County which have caused this matter."); *id.* ("It is/was policy and/or custom of above entities to improperly or inadequately investigate citizen complaints of police misconduct and instead tolerate said conduct thereby condoning misconduct and encouraging its use."); *id.* ("It is/was policy and/or custom of above entities to inadequately supervise and train its officers, including but not limited to defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its officers."); *id.* ("As a result of these policies or customs, deputies of the Etowah County Sheriff's Department know their actions would not be properly monitored by supervisory officers and that misconduct would

not be investigated or sanctioned but would be tolerated.")).[1]

In light of the Eleventh Circuit's ruling in *Randall* that heightened pleading no longer applies in civil rights cases involving a qualified immunity defense, the court concludes that Mr. Edlin's allegations could plausibly give rise to an entitlement of relief for unconstitutional supervisory liability. Accordingly, Mr. Edlin has adequately stated a claim for supervisory liability against Sheriff Entrekin and that portion of Defendants' Motion is **DENIED**.

### 3.     Clearly Established Law and Fair Warning

Additionally, the Motion is due to be denied to the extent that the Etowah County Defendants contend that Mr. Edlin is unable to show that clearly established law provided Defendant Sheriff Entrekin with fair warning that his conduct was illegal. This fair warning requirement is met through either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).

---

[1] Mr. Edlin also maintains that Sheriff Entrekin was on notice "of Officers['] violent propensities and/or misconduct and have failed to properly train, supervise and/or discipline[.]" (Doc. 1-1 at 14).

Here, Mr. Edlin has expressly alleged that Sheriff Entrekin had "knowledge of Officers['] violent propensities and/or misconduct and . . . failed to properly train, supervise and/or discipline[.]" (Doc. 1-1 at 14). As the Eleventh Circuit made clear in *Danley*:

> This Court has long recognized that supervisors are liable for the excessive force and the deliberate indifference of their employees <u>where the supervisors received numerous reports of prior misconduct of that nature by those same employees and did nothing to remedy the situation</u>. *See, e.g., Greason v. Kemp*, 891 F.2d 829, 839-40 (11th Cir.1990) (involving a claim of supervisory liability against prison warden for his employees' deliberate indifference to inmate's serious medical need); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985) (involving a claim of supervisory liability against city public safety director for his employees' use of excessive force). The district court properly denied Rikard and Willis' motions to dismiss on qualified immunity grounds Danley's supervisory liability claim.

*Danley*, 540 F.3d at 1315-16 (emphasis added).

Moreover, in *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985), the Eleventh Circuit determined that "a persistent failure to take disciplinary action against officers" who engage in excessive conduct can support a causal link in the form of a "policy of allowing or encouraging excessive force." 777 F.2d at 1443. Here, Mr. Edlin has made similar allegations that Sheriff Edlin's failure to discipline officers for their misconduct against arrested citizens created a policy of tolerance for the use of excessive force. Therefore, in light of *Danley* and *Fundiller*, the clearly

established/fair warning requirement has been satisfied such that the supervisory liability claim against Sheriff Entrekin should proceed beyond the pleadings stage.

Alternatively, "the existence of a factually similar case is not the only way to put officials on notice of the unlawfulness of their conduct." *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010). "Indeed, '[a] government official can be put on notice that his actions will violate a constitutional or statutory right by . . . a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed.'" *Id.* (citing *Danley*, 540 F.3d at 1313). Numerous pronouncements from the Eleventh Circuit on the illegality of using excessive force against a handcuffed arrestee who was securely in custody and not fighting back, *see, e.g., Handley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008) (holding that "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002"), "should also have put supervisors on notice that policies or customs of" not disciplining officers for their use of improper force or otherwise tolerating such misconduct "would be unlawful as well." *Harper*, 592 F.3d at 1237.

## IV. CONCLUSION

Therefore, for the reasons stated above, the Motion is **GRANTED IN PART** and **DENIED IN PART**. Further, Mr. Edlin is **ORDERED** to file an amended

complaint in a manner that conforms with the rulings contained in this order (*i.e.*, repleading without referencing those portions of his initial pleading which Mr. Edlin has agreed should be dismissed, including the elimination of fictitious parties) no later than March 31, 2011.

    **DONE** and **ORDERED** this the 9th day of March, 2011.

                                                    **VIRGINIA EMERSON HOPKINS**
                                                   United States District Judge