FILED
2012 Apr-11  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **SHAWN KEVIN EDLIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:11-CV-335-VEH** |
| | ) |
| **SHERIFF TODD ENTREKIN,** | ) |
| **individually, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Shawn Kevin Edlin ("Mr. Edlin") initiated this case on December 29, 2010, against several different defendants, in the Circuit Court of Etowah County, Alabama.  (Doc. 1 at Ex. A).  On January 31, 2011, former Defendant City of Gadsden removed the lawsuit to this court on the basis of federal question jurisdiction.  (Doc. 1 at 4 ("The U.S. District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331.")).

According to Mr. Edlin's amended complaint (Doc. 22) and CM/ECF, the defendants who currently remain in the lawsuit are Sheriff Todd Entrekin ("Sheriff Entrekin"), in his individual capacity, and Etowah County Sheriff Officers Robbyn

Guni, Sergeant Barry Smith, Sergeant Narfleata Excford, Captain Keith Peek, and Chief Scott Hassell.   Pending before the court is Sheriff Entrekin's Motion for Summary Judgment (Doc. 40) (the "Motion") filed on November 15, 2011.  On that same date, Sheriff Entrekin also filed a supporting brief with attached evidence. (Doc. 42).  On November 29, 2011, Sheriff Entrekin filed a supplement to his initial brief.  (Doc. 46).

On January 25, 2012, Mr. Edlin filed four documents in opposition to the Motion.  (Docs. 50-53).  Sheriff Entrekin did not file a reply and the time for such filing has expired.  Accordingly, the Motion is now under submission.  For the reasons explained below, the Motion is  **GRANTED**.

## II.    STATEMENT OF FACTS[1]

Sheriff Entrekin is the Sheriff of Etowah County, Alabama.  AF No. 1.[2]  As

---

[1]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[2]  The designation "AF" stands for admitted fact and indicates a fact offered by Sheriff Entrekin that Mr. Edlin has admitted in his written submissions on summary

Sheriff of Etowah County, Sheriff Entrekin establishes policies and procedures for his staff, including county deputies and corrections officers.  AF No. 2.  All deputy sheriffs and corrections officers working under Sheriff Entrekin receive at least the training required by the State of Alabama to carry out their respective duties.  AF No. 5.

Sheriff Entrekin did not witness or participate in any of the alleged unconstitutional conduct asserted by Mr. Edlin.  AF No. 7.1.  More specifically, Sheriff Entrekin was not present during Mr. Edlin's traffic stop, field sobriety test, arrest, transport to the Etowah County Detention Center, pre-detention medical screening, booking, transfer of prisoner custody for detention, use of force incident, or medical treatment.  AF No. 7.2.

The City of Gadsden has a contract with Etowah County for the housing of

---

judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Whenever Mr. Edlin has adequately disputed a fact offered by Sheriff Entrekin, the court has accepted Mr. Edlin's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Sheriff Entrekin's statement of facts as set forth in Doc. 42 and responded to by Mr. Edlin in Doc. 51. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 7.2) would indicate the second sentence of paragraph 7 of Sheriff Entrekin's statement of facts is the subject of the court's citation to the record.  The designation "AAF" stands for additional admitted fact and indicates a fact offered by Mr. Edlin that Sheriff Entrekin has admitted by electing not to file a reply brief.  The court's numbering of additional admitted facts (*e.g.*, AAF No. 1) corresponds to the numbering of Mr. Edlin's statement of facts as set forth in Doc. 51.  (*See id.* at 2 ¶¶ 1-5).

municipal inmates, and Gadsden police officers will bring arrestees to the Etowah County Detention Center for incarceration. AF No. 8. On January 3, 3009, Mr. Edlin was arrested and brought to the Etowah County Detention Center for incarceration by Gadsden Police Officer John Brent Whisenant ("Officer Whisenant"). AF No. 9. Sheriff Entrekin has no supervisory authority over Gadsden police officers, such as Officer Whisenant. AF No. 10.

Sheriff Entrekin does have supervisory authority over Sheriff Deputy Robyn Gunni ("Deputy Gunni") and Shift Supervisor Sergeant Barry Smith ("Sergeant Smith"), who were present during the booking of Mr. Edlin and appear on the video of the event.[2] Sergeant Smith did not inform Mr. Edlin that if he took his hands off the counter he would take it as a sign of aggression and act accordingly, as he wrote in his statement. AAF No. 1.

The Sheriff's Department's policy does not permit municipal officers to enter the detention facility with any weapons. AAF No. 2. Sergeant Smith taunted Mr. Edlin after he was injured. AAF No. 3. Neither Deputy Gunni nor Sergeant Smith was alarmed by what took place during the booking of Mr. Edlin. AAF No. 5.

The officers captured in the booking video of Mr. Edlin received no training,

---

[2] Mr. Edlin has conventionally filed with the court an audio/video copy of his booking on CD-Rom. (Doc. 52-1; Doc. 53).

counseling, or discipline from Sheriff Entrekin as a result of the incident.  (Doc. 52-2 at 5); AAF No. 3.   Sheriff Entrekin did not investigate or document any findings regarding the handling of Mr. Edlin's booking.  AAF No. 5.

## III.   APPLICABLE STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.   Qualified Immunity

Sheriff Entrekin asserts that qualified immunity bars Mr. Edlin's § 1983 wrongful supervision claim brought against him in his individual capacity.  (Doc. 22

5

at 6 ¶¶ 1-8).  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quotation marks omitted).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  *Id.* at 1357-58.

This is a two-part test.  Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).  Next, the defendant must prove that he or she was "executing that job-related function."  *Id.* at 1267.  "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."  *Cottone*, 326 F.3d at 1358.[3]

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194,

_____

[3] Here, there is no dispute about whether Sheriff Entrekin was acting within the scope of his discretionary authority.  (Doc. 19 at 9).

201 (2001).  Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established."  *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed.  *Hope*, 536 U.S. at 739.  This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Saucier*, 533 U.S. at 206.

The "unlawfulness must be apparent" under preexisting law.[4]  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).  Therefore, a temporal requirement exists related to this inquiry.  More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation.  *See Anderson*, 483 U.S. at 639 ("[W]hether an official protected by qualified immunity

---

[4]  Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation.  *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## IV.   ANALYSIS[5]

### A.   Mr. Edlin has not *prima facially* established a § 1983 supervisory capacity constitutional claim.

The *Cottone* supervisory standard provides:

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged

---

[5]   The court assumes without deciding that Mr. Edlin's § 1983 supervisory claim is still cognizable post-*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). (Doc. 42 at 11-13).

constitutional deprivation. *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5 (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's " 'custom or policy ... result[s] in deliberate indifference to constitutional rights' " or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); *Hartley*, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560–61 (11th Cir.1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at —, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

362 F.3d at 1360-61.

Because it is undisputed that Sheriff Entrekin did not personally participate in the booking of Mr. Edlin, Mr. Edlin must demonstrate a causal connection between Sheriff Entrekin's actions or inactions and the constitutional injury that he is claiming, *i.e.*, the use of excessive force and other misconduct that he endured when he was booked.[6]

---

[6] Neither side has clarified which federal constitutional provision Mr. Edlin may proceed under against Sheriff Entrekin. As a general matter, Mr. Edlin brings his lawsuit under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and is suing Sheriff Entrekin for his failure to train, supervise, and/or discipline law enforcement personnel in their use of force. (Doc.

In attempting to show a causal connection, Mr. Edlin has offered no evidence to support the widespread unconstitutional conduct avenue.  Similarly, Mr. Edlin has pointed to no facts that would support "the inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Therefore, the only remaining route available to Mr. Edlin is evidence showing "a custom or policy that resulted in deliberate indifference to constitutional rights[.]" Here, Mr. Edlin contends that Sheriff Entrekin's failure to adequately train, supervise, and discipline law enforcement officers working for the Etowah County Sheriff's

---

22 ¶ 1; *id.* at 6).  As the Eleventh Circuit has explained the right to be free from excessive force:

> It is unclear, however, whether a pretrial detainee's claim that officers used excessive force against him states a cause of action under the Fourth Amendment. *Graham*, 490 U.S. at 395 n. 10, 109 S. Ct. at 1871 n. 10.; *Wright v. Whiddon*, 951 F.2d 297, 300 (11th Cir. 1992). In contrast, the law is well established that pretrial detainees may bring § 1983 actions to redress violations of their rights under the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n. 10, 109 S. Ct. at 1871 n. 10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39, 99 S. Ct. 1861, 1871-74, 60 L. Ed. 2d 447 (1979)).

*Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993).  Here, the court assumes without deciding that Mr. Edlin, as a pretrial detainee, is entitled to both a Fourth Amendment and a Fourteenth Amendment right to be free from the use of excessive force.

Office is the policy or custom that led to the violation of his constitutional rights when he was being booked.[7]

In addressing the failure to train as a custom or policy under § 1983, the Eleventh Circuit has clarified:

> Mrs. Belcher contends that Chief Anderson's failure to train his officers in the handling of suicidal inmates constituted deliberate indifference to her son's life. A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his "failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" and the failure has actually caused the injury of which the plaintiff complains. *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990); *Greason v. Kemp*, 891 F.2d 829, 837 n. 15 (11th Cir.1990); *cf. City of Canton v. Harris*, 489 U.S. 378, 388, 390, 109 S. Ct. 1197, 1204-05, 103 L. Ed. 2d 412 (1989) (addressing the analogous situation of municipal liability under section 1983).  Only when the failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" that is necessary for section 1983 liability to attach. *City of Canton*, 489 U.S. at 389, 109 S. Ct. at 1205.  Failure to train can amount to deliberate indifference when the need for more or different training is obvious, *id.* at 390, 109 S. Ct. at 1205, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, *Greason*, 891 F.2d at 837, and when the failure to train is likely to result in the violation of a constitutional right, *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205.

*Belcher v. City of Foley*,  30 F.3d 1390, 1397-98 (11th Cir. 1994).

The record reflects that officers serving under Sheriff Entrekin receive basic

---

[7]  This court has previously dismissed any deliberate indifference to medical needs claim against Sheriff Entrekin in his individual supervisory capacity.  (Doc. 31 at 12).

training.  Mr. Edlin has not shown "a history of abuse by subordinates" such that Sheriff Entrekin was "on notice of the need for corrective measures" in the form of additional instruction.  Mr. Edlin's situation also is not comparable to the use of deadly force example that the *Canton* Court utilized when illustrating that "the need for more or different training is so obvious, <u>and the inadequacy so likely to result in the violation of constitutional rights</u>, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  489 U.S. at 390 & n.10, 109 S. Ct. at 1205 & n.10 (emphasis added).

Instead, Mr. Edlin relies upon the treatment when he was booked as the sole basis to show deliberate indifference on the part of Sheriff Entrekin as a supervisor. When, such as is the situation here, "[t]he policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the [defendant], and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985) (footnote omitted).  Under such circumstances, Mr. Edlin has not demonstrated deliberate indifference on the part of Sheriff Entrekin as the proof upon which he relies is simply to attenuated to solidify both the blameworthiness and causal links.  Accordingly, Mr. Edlin has not *prima facially* established an actionable

§ 1983 supervisory constitutional claim, and Sheriff Entrekin's Motion is

**GRANTED**.

> **B.    Alternatively, Mr. Edlin has not satisfied the clearly established law and fair warning requirement.**

Mr. Edlin's § 1983 supervisory capacity constitutional claim alternatively and

independently fails because he has not satisfied the clearly established law and fair

warning requirement.  As explained during the pleadings stage:

> This fair warning requirement is met through either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision is specific enough to demonstrate the conduct was illegal, even in the total absence of case law. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).

(Doc. 19 at 13).

In its previous ruling denying qualified immunity to Sheriff Entrekin in part,

the court relied on Mr. Edlin's allegations that Sheriff Entrekin had received

numerous complaints of employee misconduct to determine that from a pleadings

standpoint, the fair warning standard was met.  (Doc. 19 at 14).  Now the court is

reviewing an evidentiary record that lacks any substantiation of such a pattern of

known subordinate misconduct.  Therefore, the fair warning component can no longer

be sustained on cases such as *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) and

*Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985).  (Doc. 19 at 14-15).

Similarly, because the factual record does not reflect that either Sergeant Smith, Deputy Gunni, or any other law enforcement officer of the Etowah County Sheriff's Office used excessive force on Mr. Edlin, decisions such as *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010) and *Handley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008) (holding that "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002"), do not transform Mr. Edlin's case into an obvious clarity one.  (Doc. 19 at 15); *see also Vineyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) ("And if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so 'with obvious clarity' to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.").

In an effort to show that he has met the clearly established/fair warning test, Mr. Edlin states that Sergeant Smith "certainly would not have said what he did to an injured man unless he knew there would be no investigation" and cites to the excessive force case of *Vineyard v. County of Murray*, 990 F.2d 1207 (1993).  (Doc. 51 at 4). However, *Vineyard* does not save Mr. Edlin's individual capacity claim

against Sheriff Entrekin for at least three reasons.

One, in *Vineyard*, "[a]fter the close of the evidence, <u>the court directed a verdict</u> <u>in favor of Sheriff Hansird in his individual capacity,</u> but denied motions for directed verdicts for Hansird in his official capacity, the County and Chastain." 990 F.2d at 1209 (emphasis added). Thus, *Vineyard* addresses official capacity liability with respect to a sheriff "whose acts and decisions can establish the policy for [a] [c]ounty" 990 F.2d at 1210 n.3, not the issue of whether a public official has received fair warning regarding his potential personal liability due to a lack of supervision.

Two, the Eleventh Circuit expressly found in *Vineyard* that the plaintiff had not only "presented evidence regarding this particular incident, [but also had] . . . offered independent evidence that the county's policies regarding the supervision, discipline and training of deputies in the Sheriff's Department were the moving force of the constitutional violation." 990 F.2d at 1212. This independent evidence included testimony from Sheriff Hansird "that it was not unusual to receive [officer] complaints" and that "no[] log [of] complaints" was maintained. *Id.* Such independent evidence signaling a breakdown in complaint management is non-existent in this lawsuit.

Three, in *Vineyard*, the officers involved in the beating of the plaintiff were under the direct supervision of Sheriff Hansird. In contrast, Mr. Edlin attempts to

16

link the excessive force that he claims to have endured at the hands of Officer Whisenant, a police officer with the City of Gadsden Police Department, to a lack of secondary or supplemental supervision by Sheriff Entrekin.  Assuming that Sheriff Entrekin could be held constitutionally liable for the failure to supervise Officer Whisenant, Mr. Edlin has not pointed to any § 1983 supervisory law which confirms that such a principle would have been clearly established at the time of Mr. Edlin's booking.

As the court understands the record on summary judgment, the subordinate misconduct that Mr. Edlin directly attributes to the Etowah County Sheriff's Office includes taunting by Sergeant Smith after Mr. Edlin was physically injured by Officer Whisenant and the failure of Sergeant Smith and Deputy Gunni to express any alarm over how Mr. Edlin was treated by Officer Whisenant.  To the extent that these actions or inactions by Sergeant Smith and Deputy Gunni can even constitute excessive force or some other form of cognizable unconstitutional subordinate conduct sufficient to trigger § 1983 supervisory liability, Mr. Edlin, once again, has not met his burden of citing to any clearly established law that would have been applicable to Sheriff Entrekin in this regard at the time of Mr. Edlin's booking.

Therefore, due to all of the foregoing distinguishing factors, *Vineyard* does not provide Sheriff Entrekin with sufficient fair warning, and Mr. Edlin has not otherwise

shown how this requirement is met.  Therefore,  qualified immunity protects Sheriff Entrekin from Mr. Edlin's pursuit of individual liability against him for unconstitutional supervision.  Accordingly, the Motion is alternatively **GRANTED** on lack of clearly established law and fair warning grounds.

## V.   CONCLUSION

For the reasons stated above, the Motion is **GRANTED**, and Mr. Edlin's remaining claim asserted against Sheriff Entrekin in his individual capacity (*i.e.*, as set forth in count VII of his amended complaint) is **HEREBY DISMISSED** on the defense of qualified immunity.  Count VII of Mr. Edlin's case still remains pending against several other Etowah County Sheriff Officers as pointed out in § I. above. The deadline for Mr. Edlin to show cause as to these defendants runs on April 19, 2012.  (Doc. 56).

**DONE** and **ORDERED** this the 11th day of April, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge